May it please the court, I represent Frank Pons. This is a case, the only issue is whether the district court properly addressed acceptance of responsibility in the district court after a plea of guilty. On page 15 of the transcript, the sentencing transcript, the district judge stated addressing acceptance of responsibility. She asked the rhetorical question, if you flee the jurisdiction and you fail to appear in court, why would we ever, how can we ever say that someone has agreed to accept responsibility? It appeared at the sentencing and it appears from the transcript of the sentencing hearing that the district court was not familiar with the cases of this circuit and other circuits which state that acceptance of responsibility and obstruction of justice can coexist. You don't think Judge Kendall understood that? Were those cases brought to her attention? They were. Yeah, okay. Everybody understands that. It's not impossible, but you've cited a number of cases, Mr. Nash, which indicate that it is possible for a judge to give acceptance in extraordinary cases, even where there's obstruction such as flight from the jurisdiction. Correct. Can you direct us to any cases that have said a district judge abused her discretion by failing to do so? There are cases. I don't remember the names of them, but there's no case where the defendant... Are there any cases in which courts of appeals have said a district judge was required to give acceptance? No, there is no case. This would be the first. I don't think that you have to say that. I think that what happened here is the judge lost sight of the cases. I use the word familiar. I know Judge Kendall. She's a good judge and a smart judge. On this occasion, she just seemed not to take notice of them. She certainly didn't address them at sentencing, and actually the government didn't address them in their brief in the district court or really address them in their brief in this court. Mr. Nash, a good part of your argument seems to be based on the idea that Mr. Pons deserves special credit for returning from a country with which the United States does not have an applicable extradition treaty. I didn't use those words, but yes. It shows he's a good guy, right? I don't know if it shows he's a good guy, Judge, but he did self-surrender. That saved the government money. He came back, entered into a plea agreement, immediately pled guilty. Are you familiar with the extradition treaty between the United States and Brazil? I looked it up at the time, and there is no extradition for these kind of offenses. I'm looking at one from 1961 and 62 that says you can extradite for obtaining money, valuable securities, or other property by false pretenses. Sounds a lot like what we've got here. It does, but I would say in the district court, nobody else raised that. The government didn't raise it in the district court or raise it here. Well, I'm raising it. I understand you are, Judge, and I did look it up, and at the time, I was a little uncomfortable with saying it without knowing it, and I did look it up. That's a good policy. Yes, it is, but I should have brought the book that I found it or the website that I found it with me, but I don't have it. You're talking about 1961. I don't know what's happened in the meantime, whether it's different, but the government never contradicted that in the district court or in this court. What is extraordinary? The dictionary says it's unusual or not ordinary. The cases of this court speak of it in terms of fleeing at time T and then at time T plus one, pleading guilty and accepting the punishment. He went one step further. He surrendered. They didn't have to go find him. In the district court, the government talked about tracking him down in London, but he wasn't in London. He was in Brazil. On page 20 of its brief... He led the government on a wild goose chase. Well, I don't know how far they gave chase. It's not clear. They clearly knew immediately they thought he went to London. This is certainly a serious obstruction of justice. I don't think it could be characterized otherwise. Well, isn't it really for the... There aren't really rules here. Isn't it for the matter of judgment by the district court, whether the fact that he returned and whether that offsets his obstruction of justice? Yes, it is. But the district court didn't address it. What would be the basis of it to say that Judge Kendall was required to grant this acceptance? She wasn't required to, but when she addressed acceptance of responsibility, she asked the prosecutor, when this case was going to go to trial a year and some months ago, did you prepare for trial? Did you interview your witnesses? To which the government said yes. And you were prepared to go to trial. The government said yes. All that happened at time T. What we're talking about... No, no, you're wrong. The obstruction of justice occurs first. Yes. And that has to be weighed against a subsequent acceptance of responsibility. Correct. I agree. You're suggesting the obstruction of justice is irrelevant... No, I'm not. What did you just say about obstruction of justice? The obstruction of justice occurred at time. It doesn't matter when it occurred. Don't you understand that? Well, I... It doesn't matter. The obstruction of justice is a basis for, you know, a higher guidelines range. And it doesn't matter when it occurred. Correct. The question is whether the acceptance of responsibility was sufficient to offset that obstruction. I agree. So forget about when the obstruction occurred. I agree. But the judge in the district court never addressed that question. What is that question? Of whether the acceptance of responsibility was such that it was extraordinary. When she addressed it, she took it back to the obstruction and asked the government questions about, before he fled, did you prepare for trial, interview your witnesses, and were you ready to go for trial? Well, of course. That was the obstruction, or that was part of the obstruction of justice. So she wants to determine the magnitude of that obstruction. Now, she was aware that he came back from Brazil. That's the so-called acceptance of responsibility. She didn't think it matched, it offset the obstruction of justice. Now, what are we supposed to say? She didn't say anything about that. It was as if that had not existed. Well, she didn't give him the acceptance of responsibility, and she did discuss that. On the pages of the transcript, I think it's 24, 25, where she discusses it, she doesn't discuss any of the cases or the facts of the subsequent self-surrender. Look, what she says was, maybe he got tired, maybe he finally did accept after a year, personally. That's not the kind of acceptance that is extraordinary. But maybe, isn't, did not. She does say that, exactly that. May have tired of living in a foreign country. Well, how is she supposed to determine his inner thoughts? That's a difficult question on which this court has spoken. But she doesn't talk about what the acceptance of responsibility is. She doesn't say, for instance, I understand that. He gave his little speech about how he had accepted responsibility, right? I believe he did. She heard it, and then she says it's not enough. Well, actually, she had already ruled before he spoke. She had ruled on acceptance of responsibility before he had the right of elocution. But she never addresses it, and that's my point. It's as if it didn't happen. What do you mean? He hadn't asked for acceptance of responsibility before? Oh, he did. Well, of course. She knew he was asking for acceptance of responsibility. And he gave reasons, right? Well, actually, I gave the reasons. She wasn't sure what the reason was. That's why she said, maybe he got tired, maybe this, maybe that. What more is there to say? Well, I don't think it could be maybe. What do you mean it can't be maybe? She can't read his mind. No, but she can make some findings. She could say that. She made a finding, all right. She denied the acceptance of responsibility. Now, what would you have liked her to say? I would like to have addressed the cases and addressed the fact of the self-surrender. I don't believe she did in making those comments. What is a case like this case? Well, there are several people. Well, what is one that is like this case that you should have discussed? Larson and Buckley are similar. And what happened in that case? In both cases, they claimed acceptance. One denied because in the sentencing process, he had obstructed justice. Not before, but during the process. Larson was similar in that respect. But there are cases that accord acceptance of responsibility in spite of obstruction of justice. When you read the transcript... So these cases you're discussing, are these cases where a court of appeals reversed? Did it have a refusal to give... I don't know. They're both cases of this court. Buckley is this court in 1981. That's not my question. I don't care what court it is. Are these cases where the court of appeals reversed a refusal to grant an acceptance of responsibility? Among the cases that we cited, there are two that did. I don't recall what cases exactly they are, but there is no case exactly similar to this. There's no instance where somebody self-surrendered and then immediately pled guilty. And if the court, the district court, had addressed that... So you think that if someone, having spent years on the lam, comes back and says, all right, you know, I'll plead guilty, you think that automatically... No. Not automatically. Right. The district court must address it, would say something of the court... She said something. She says she doesn't know why he's done this, but she doesn't regard this after these years on the lam as offsetting the obstruction of justice. Not clear to me what more she's supposed to... what further she's supposed to say. On that point, we differ, Judge. Okay. Okay, well, thank you, Mr. Yonan. Thank you, Judge. I mean, Mr. Nash. Sorry. Mr. Yonan? May it please the Court. My name is Jason Yonan. I'm appearing today on behalf of the United States. I want to address one of the first issues that Mr. Nash raised, which was that somehow the district court judge was not aware that she could give him acceptance. I think that is just not true from a reading of the record. There was a long discussion about whether this case was extraordinary, and the judge was well aware that she could give the defendant a reduction to his base offense level if she found the case was extraordinary. She just didn't think this was an extraordinary case. Addressing the argument that counsel raised in the district court, which was the case is extraordinary because the defendant self-surrendered, the district court judge just didn't think that was the case, and she laid out the reasons why she didn't think it was the case. Because people turn themselves in all the time, and they turn themselves in maybe because they're tired of living on the run, they miss their family, they run out of money. In her view, that was not an extraordinary fact to grant this defendant acceptance. She then went even further and went into the basically harm that the obstruction caused. She noted that both the government was ready for trial when it was determined that the defendant had fled the country. She noted that she was ready, the district court was ready to try the case, and then she asked questions and analyzed and took into account the harm that the obstruction caused, that this defendant was gone for a year, that the government was looking for him. She weighed all of that and determined that this was not a case that was extraordinary so as to grant the defendant a reduction for acceptance in a case where he had already obstructed justice. So the plea of guilty hadn't... There wasn't an agreed upon sentence between the parties? There was not an agreed sentence. So that's why... There was a plea agreement. There was a plea agreement. In the agreement, the government left it up to the district court to determine whether or not the defendant had accepted responsibility. He was free to argue that he had accepted responsibility. In the government's version of the offense, the government took the position that he should not be granted acceptance points. Unless the panel has any further questions, we ask that the judgment of the district court be affirmed. Thank you very much. So, Mr. Nash, you have run out of time, but if you'd like to say anything further, we'll listen to you. The government began with the statement that misunderstood what I said, that I was saying that the district court was not aware that she could give acceptance responsibility. She certainly was aware of it. It's just that I don't think that she addressed it in any meaningful manner, and for that reason, I think that Your Honor should vacate the sentence and return it to the district court for resentencing. I thank you. Okay, well, thank you, Mr. Nash. Mr. Nunez?